

**Signed and Filed: November 14, 2007**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 05-34008 TEC |
| SDR CAPITAL MANAGEMENT, INC., | Chapter 7 |
| Debtor. | |
| ANDREA A. WIRUM, Chapter 7 Trustee, | |
| Plaintiff, | |
| vs. | Adv. Proc. No. 07-3022 TC |
| JOHN O. WILSON, individually and as Trustee of the Wilson Family Living Trust, | |
| Defendant. | |

### MEMORANDUM DECISION

This action was tried before the court on October 30 and November 1, 2007. Dennis D. Davis appeared for Plaintiff Trustee. John H. MacConaghy appeared for Defendant Wilson. For the reasons set forth below, I find for Defendant.

MEMORANDUM DECISION -1-

Debtor SDR Capital Management, Inc. (Debtor) provided financial advice to investors. Defendant John Wilson (Wilson) served as chief economist for the firm from January 1999 through October 2001, and as a director from January 1999 through December 2001. As part of his compensation, Wilson received shares of Debtor's stock. Debtor redeemed 205,240 of Wilson's shares in the spring of 2002 for $.62 per share, and redeemed Wilson's remaining 175,000 shares in the summer of 2003 for $.52 per share.

Debtor filed a chapter 7 petition on October 11, 2005. Trustee, contending that Debtor was insolvent at the time of each of the payments to Wilson, and that the shares redeemed had no value to Debtor, seeks to recover the payments to Wilson as constructive fraudulent conveyances and as shareholder distributions prohibited by California Corporations Code Section 506. Wilson contends that Debtor actually made money on the transactions by reselling at $1.00 per share the shares redeemed from Wilson at $.62 and $.52 per share. I assume, without deciding, that Debtor was insolvent at all times relevant.

The redemption of shares by an insolvent corporation generally does not provide value to creditors of the corporation. Joshua Slocum, Ltd. v. Boyle (In re Joshua Slocum, Ltd.), 103 B.R. 610, 618-19 (Bankr. E.D. Pa. 1989), aff'd 121 B.R. 442 (E.D. Pa. 1989); Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.), 100 B.R. 127, 136 (Bankr. D. Mass. 1989). This is so because the redemption payment decreases corporate assets without decreasing corporate debt. Furthermore, redemption generally does not provide value to the corporation's creditors even when the shares have value to a third party, because a corporation generally

can sell treasury shares without redeeming other shares. There is no *per se* rule, however, and a court can find that retention of shares does provide value to the corporation where it is a necessary part of a broader transaction through which the corporation obtains money or property. <u>Corporate Jet Aviation, Inc. v. Vantress (In re Corporate Jet Aviation, Inc.)</u>, 82 B.R. 619, 622-23 (N.D. Ga. 1987); <u>aff'd</u> 838 F.2d 1220 (11th Cir. 1988) (table).

The present case warrants departure from the general rule. The evidence shows that Debtor received reasonably equivalent value for the funds paid to Wilson in redemption of his shares, because that redemption was necessary to Debtor's sale of treasury shares at a higher price.

Debtor would not have sold treasury shares to new investors without redeeming shares previously issued. Debtor's shareholders had agreed that the total number of shares issued or on which options had been granted (the Outstanding Shares) would not exceed 11,600,000. The corporate records demonstrate that Debtor honored this agreement. In March 2002, shortly before the first redemption of Wilson's shares, there were exactly 11,600,000 Outstanding Shares. Thereafter, each time Debtor issued shares, Debtor redeemed a like number of shares at about the same time, so that the Outstanding Shares never exceeded 11,600,000 for any extended period of time.

The redemption of Wilson's shares was part of the means by which Debtor sold treasury shares without breaching the limit on Outstanding Shares. On April 30, 2002, Debtor recorded both the redemption of 205,240 shares from Wilson, and the issuance of

**MEMORANDUM DECISION** -3-

196,905 shares to Butler, Russo and Young.[1] On April 25, 2003, Debtor recorded the issuance of 175,000 shares to Lis, causing the Outstanding Shares to exceed the agreed-upon limit by approximately 181,000. On June 10, 2003, Debtor redeemed Wilson's remaining 175,000 shares, and later redeemed additional shares from other persons, to bring the number of Outstanding Shares within the limit once again.[2]

Debtor made a profit both times that Debtor redeemed Wilson's shares and sold treasury shares. At about the same time Debtor redeemed 205,240 shares from Wilson for $127,371, Debtor sold 196,905 shares to Butler, Russo and Young for $196,905. Shortly before Debtor redeemed 175,000 shares from Wilson for $91,000, Debtor sold 175,000 shares to Lis for $175,000.

Based on the above, I determine that the redemption of Wilson's shares and the sale of treasury shares should be combined for the purpose of determining whether Debtor received value for the shares redeemed. The Ninth Circuit used just this approach in a similar situation, combining two transactions in holding that the recipient of an alleged fraudulent transfer had paid reasonably

---

[1] Debtor also recorded on April 30, 2002 the issuance of 598,065 shares to Daniel Warmenhoven for $.57 per share, but Debtor's March 7, 2003 "Cap Table" indicates that these shares had been issued to Warmenhoven before that date, and thus should not be paired with the redemption of Wilson's 205,240 shares.

[2] There is conflicting evidence as to exactly when each redemption and transfer of shares occurred. The letter memorializing the agreement to buy or redeem shares has one date, the related payment is made on a different date, and the transfer is recorded on the Debtor's stock register on a third date. Notwithstanding this variation, and the fact that in some instances the formal decision to redeem occurred after the sale of treasury shares, I find that the general pattern was to redeem shares as necessary to keep Outstanding Shares within the 11,600,000 limit, and that Debtor made the redemptions of Wilson's shares at issue here with that intent.

MEMORANDUM DECISION     -4-

equivalent value.  <u>Wyle v. C.H. Rider & Family (In re United Energy Corp.</u>), 944 F.2d 589 (9th Cir. 1991).  "Bankruptcy courts are courts of equity.  As such, they possess the power to delve behind the form of transactions and relationships to determine the substance."  <u>Id.</u> at 596.  Thus, the bankruptcy court may combine transactions that are "intimately intertwined."  <u>Id.</u>; <u>accord</u> <u>Vantress</u>, <u>supra</u>, 82 B.R. at 622-23.

Trustee contends that Debtor's sale of treasury shares should be accorded no weight, because a subsequent SEC examination disclosed numerous irregularities in the sale of those shares.  The SEC report stated that Debtor breached its fiduciary duty by selling shares to existing clients for more than it paid, and that Debtor should not have sold its shares to clients who maintained conservative portfolios.

The SEC report does not justify disregarding the sale of treasury shares in determining the value of the shares redeemed.  That Debtor should not have sold shares to its clients *at a profit* does not suggest that the shares were not worth *at least what Debtor paid Wilson*.  Equally important, creditors suffered no harm as a result of the problems noted by the SEC.  None of the persons who purchased the treasury shares ever asserted claims against Debtor.  Thus, the net result of the related redemption-sale transactions was to increase Debtor's assets without increasing its liabilities.  Finally, to disregard the resale of shares for the reasons urged by Trustee would not further the purpose of the statutes under which Trustee asserts her claims (protecting creditors against diminution of assets available to pay their claims).  Trustee's approach would have Wilson pay the estate for

**MEMORANDUM DECISION**                -5-

securities violations that: (1) did not harm creditors of the estate; (2) Wilson did not perpetrate; and (3) have never been formally charged or established in any court.

I find that the redemption of Wilson's shares was "intimately intertwined" with the sale of treasury stock at a higher price, and that Debtor received fully equivalent value for the redemption payments. Trustee cannot recover the transfers at issue as constructive fraudulent conveyances, because Wilson provided reasonably equivalent value for the money received. Cal. Civ. Code § 3439.05. Trustee cannot recover the transfers at issue as unlawful shareholder distributions, because Wilson provided valuable consideration for the transfers. Cal. Corp. Code § 166.

It is not necessary to reach the other issues raised by the parties.

Judgment will be entered for Wilson.

This memorandum decision constitutes the court's findings of fact and conclusions of law.

**\*\*END OF MEMORANDUM DECISION\*\***